UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------- X
UNITED STATES OF AMERICA,                      :

    vs.                                        :

MIKHAIL ZEMLYANSKY, et al,                     :

        *Defendants*,                        :
                                    No. 12 Cr. 171 (JPO)

VLADISLAV ZARETSKIY, YURIY ZAYONTS, and        :
MIKHAIL KREMERMAN
        *Defendants-Movants*,                :

                                         :

                                         :
---------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS VLADISLAV ZARETSKIY'S, YURIY ZAYONTS'S AND MIKHAIL KREMERMAN'S MOTION TO <u>SUPPRESS</u>**

CLAYMAN & ROSENBERG LLP
Henry E. Mazurek
305 Madison Avenue, Suite 1301
New York, New York 10165
Tel. 212.922.1080
Fax 212.949.8255
*Attorney for Defendant*
*Vladislav Zaretskiy*

COOLEY LLP
Jonathan Bach
Michael A. Blasie
1114 Avenue of the Americas
New York, NY 10036
Tel. 212 479-6000
Fax 212 479-6275
*Attorneys for Defendant*
*Mikhail Kremerman*

HAFETZ NECHELES & ROCCO
Frederick P. Hafetz
Noah E. Shelanski
500 5th Avenue, 29th Floor
New York, NY 10110
Tel. 212 997-7595
Fax 212 997-7646
*Attorneys for Defendant*
*Yuriy Zayonts*

## Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 2

      A.      Tri-State Billing Corp ............................................................................................ 2

      B.      The Tri-State Search Warrant ............................................................................... 3

      C.      The Supporting Affidavit ...................................................................................... 4

      D.      Execution of the Search Warrant .......................................................................... 6

      E.      Apparently No Off-Site Searches Have Been Conducted To Date ....................... 6

ARGUMENT ................................................................................................................................ 7

I.      THE WARRANT WAS OVERBROAD AND WRONGLY AUTHORIZED THE SEIZURE OF ITEMS AS TO WHICH THERE WAS NO SHOWING OF PROBABLE CAUSE ............................................................................................................ 7

II.      BECAUSE THE SUPPORTING AFFIDAVIT WAS NOT ATTACHED TO OR INCORPORATED IN THE WARRANT, THE WARRANT WAS AN UNLAWFUL GENERAL WARRANT THAT GAVE RISE TO AN UNLAWFUL GENERAL SEARCH ................................................................................. 12

III.     COMPUTERS AND OTHER ELECTRONIC STORAGE DEVICES WERE SEIZED BUT APPARENTLY NEVER SEARCHED .................................................... 14

CONCLUSION ........................................................................................................................... 15

## Table of Authorities

Page(s)

**CASES**

*Contrast U.S. Postal Serv. v. C.E.C. Servs.*,
  869 F.2d 184 (2d Cir. 1989) ................................................................................................ 10

*Coolidge v. New Hampshire*,
  403 U.S. 443 (1971) ............................................................................................................ 12

*Groh v. Ramirez*,
  540 U.S. 551 (2004) ..................................................................................................... 10, 13

*Maryland v. Garrison*,
  480 U.S. 79 (1987) .............................................................................................................. 12

*Nat'l City Trading Corp. v. United States*,
  635 F.2d 1020 (2d Cir. 1980) .............................................................................................. 10

*Roberts v. United States*,
  656 F.Supp. 929 (S.D.N.Y. 1987), *rev'd on other grounds*, 852 F.2d 671 (2d Cir.
  1988) ............................................................................................................................. 10, 11

*United States v. Abboud*,
  438 F. 3d 554 (6th Cir. 2006) ................................................................................................ 9

*United States v. Cioffi*,
  668 F.Supp.2d 385 (E.D.N.Y. 2009) ............................................................................. 12, 13

*United States v. Cohan*,
  628 F.Supp.2d 355 (E.D.N.Y. 2009) .................................................................................... 10

*United States v. Comprehensive Drug Testing, Inc.*,
  579 F.3d 989 (9th Cir. 2009) ............................................................................................... 14

*United States v. George*,
  975 F.2d 72 (2d Cir. 1992) ............................................................................................ 10, 13

*United States v. Gigante*,
  979 F.Supp. 959 (S.D.N.Y. 1997) ........................................................................................ 11

*United States v. Graziano*,
  558 F.Supp.2d 304 (E.D.N.Y. 2008) .................................................................................... 15

*United States v. Hernandez*,
  No. 09 Cr. 625, U.S. Dist. LEXIS 719 (S.D.N.Y. Jan. 6, 2010) ............................................. 7

## Table of Authorities
(continued)

**Page(s)**

*United States v. Hickey*,
    16 F.Supp.2d 223 (E.D.N.Y. 1998) ...................................................................................11

*United States v. Hunter*,
    13 F.Supp.2d 574 (D. Vt. 1998)........................................................................................11

*United States v. Legg*,
    18 F.3d 240 (4th Cir. 1994) ..............................................................................................11

*United States v. Markey*,
    131 F.Supp.2d 316 (D. Conn. 2001).................................................................................10

*United States v. Metter*,
    2012 WL 1744251 (E.D.N.Y. 2012)............................................................................2, 14

*United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*,
    307 F.3d 137 (3d Cir. 2002)................................................................................................7

*United States v. Paccione*,
    738 F.Supp. 691 (S.D.N.Y. 1990) ....................................................................................10

*United States v. SDI Future Health, Inc.*,
    568 F.3d 684 (9th Cir. 2009) .........................................................................................8, 9

*United States v. Vilar*,
    No. S3 05 Cr. 621 (KMK), 2007 WL 1075041 (S.D.N.Y. April 4, 2007) ..........................11, 5

*United States v. Waker*,
    534 F.3d 168 (2d Cir. 2008).............................................................................................13

*United States v. Yusuf*,
    461 F.3d 374 (3d Cir. 2006).............................................................................................12

**OTHER AUTHORITIES**

U.S. Constitution, Amendment IV ..................................................................................... *passim*

**Preliminary Statement**

Defendants Vladislav Zaretskiy, Yuriy Zayonts and Mikhail Kremerman seek to suppress all evidence seized from the offices of Tri-State Billing Corp. ("Tri-State"), at 28 Dooley Street in Brooklyn, during a search conducted pursuant to a warrant on February 29, 2012. Zaretskiy is the legal owner of Tri-State, and according to the affidavit in support of the search warrant, Zayonts and Kremerman maintained billing operations on the premises. (Declaration of Henry E. Mazurek at ¶ 3 & Ex. B (Affidavit of Special Agent Michael D. Kelley at ¶ 12a)).[1]

The search, as contemplated by the warrant application and then as executed by the agents, was fundamentally overbroad – resulting in the seizure of virtually every piece of paper and computer from the premises, and then more. This comprehensive search and seizure was executed notwithstanding the lack of any allegation in the supporting affidavit to the effect that Tri-State -- as a whole -- was a creature or instrument of fraud. At most, there was probable cause to search for specific items, or for specific items associated with specific individuals, but there was no justification or probable cause to conduct a wholesale seizure of every item of possible interest on the premises.

The warrant purportedly authorizing the search was also defective in that it contained none of the limiting language or features necessary for a warrant to comply with the particularity requirements of the Fourth Amendment: the warrant set forth no temporal or other restrictions with respect to the broad categories of documents to be seized and did not attach or incorporate the affidavit issued in support of the warrant so as to guide and thereby limit the discretion of the agents executing the search. (Ex. C). The result was an unlawful general warrant and an unlawful general search.

---

[1] All exhibits referenced herein are attached to the Declaration of Henry E. Mazurek, dated January 18, 2013, and filed herewith.

1

Compounding these problems, massive amounts of computer hardware – including numerous computer hard drives and thumb drives – were seized based on the purported rationale that specialized searches were necessary and could only be conducted off the premises in a more scientific, controlled setting.  The affidavit in support of the warrant noted, for example, that "a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted." (Ex. B at ¶ 27(b)).  Yet, despite the expressed need for specialized and complete searches, and the wholesale seizure of computer equipment that followed as a result, the government to date has apparently not undertaken to search the seized hard drives in any meaningful way, did not rely on any of their contents in presenting this matter to the grand jury, and has not identified any particular documents resulting from this seizure in the course of discovery. (Ex. E, Tr., 3/8/2012 at 32; Ex. F, Tr., 6/28/2012 at 13-14; Ex. G, Tr., 9/20/2012 at 14).  In *United States v. Metter*, 2012 WL 1744251 (E.D.N.Y. 2012), Judge Irizarry recently suppressed evidence in similar circumstances, where a massive computer seizure was followed by a period of prolonged government inaction in which anticipated off-site searches never took place.

For these reasons, all of the evidence seized from Tri-State must be suppressed.

## FACTUAL BACKGROUND

### A.  Tri-State Billing Corp.

Tri-State is private corporation that is neither a No-Fault Clinic nor a Modality Clinic, *i.e.*, the entities that the government has described as "medical fraud mills" throughout its prosecution of this case. (Ex. B at ¶ 5(c)).  It is a billing company that handles the processing of bills for various medical services providers.  It does not share ownership with any medical office

2

or professional services corporation.  Tri-State was incorporated in New York State on or about April 7, 2011, and its sole shareholder and President is Vladislav Zaretskiy.  (Ex. A).

> **B.     The Tri-State Search Warrant**

The Tri-State search warrant, issued in the Eastern District of New York on February 27, 2012, authorized a broad search that, by its terms, encompassed virtually every item one might expect to find in a billing office.  Attachment A to the Warrant lists the following general categories of documents and materials to be seized:

1. Bank account information;
2. Ledgers documenting patient medical treatment, tests provided, and other records related to patient care;
3. Signature stamps;
4. Calendars and patient appointment records;
5. Cellphones of TARGET SUBJECTS found at SUBJECT PREMISES;
6. Checks, cash, and other financial instruments;
7. Computers;
8. Thumb drives.

(Ex. C).  Attachment A further explains that "[i]n order to search for the items described above, that may be contained in electronic media, law enforcement personnel are authorized to search . . . and seize" computer equipment and electronic devices, and then to conduct further searches of any seized computers and electronic devices off-site.  (Ex. C).

The broad categories of documents called for by Attachment A are not defined with reference to any particular timeframe, or with reference to any particular individuals under investigation.  The affidavit in support of the warrant referred explicitly to Messrs. Zayonts and Kremerman, but those names appear nowhere on the face of the warrant to limit the scope of the

3

search.  Indeed, Attachment A to the warrant refers generically to TARGET SUBJECTS without identifying who those subjects are.  Although the identity of the target subjects is spelled out in the affidavit in support of the warrant, that affidavit was apparently neither attached to the warrant nor incorporated by reference therein.[2]  Mr. Zaretskiy is not named in either the warrant or the affidavit.

The only reference in the warrant to the federal crimes under investigation appears in the broad description of electronic devices that the agents were authorized to seize and then subsequently search off the premises:  "Any computer equipment and storage device capable of being used to commit, further or store evidence of the federal criminal offenses of wire fraud, bank fraud, health care fraud; and/or money laundering."  (Ex. C, Item 9).  Of course, this general laundry list of federal property-related crimes could not limit the discretion of the executing agents, or the scope of their search and seizure, in any meaningful way.  Any computer or electronic device found on the premises would fall within this broad description.  Nor does there appear to be a protocol in place to impose meaningful limits on any search of the computerized and electronic data to be conducted off-site.  Essentially, the warrant authorized the agents to seize all computers on site and then determine later, through broad unlimited off-site searches, if any of the seized computer data had any relationship to any of the crimes under investigation.

C. **The Supporting Affidavit**

The affidavit is a sprawling document that undertakes generally to describe New York State's "No-Fault" insurance regime as well as aspects of New York State's professional services

---

[2] The affidavit was filed under seal (Ex. B), and the government has not provided a copy of any unsealing order in discovery.  A search of the ECF public docket in the Eastern District of New York reveals no filing of the Tri-State Warrant and Affidavit. (Mazurek Decl. at ¶ 6).

corporation law, with reference to a so-called "fraudulent incorporation" theory of fraud based on an interpretation of state law. (Ex. B at ¶ 5 & n. 3). It generally mirrors the indictment in this case in describing a wide-ranging investigation of No-Fault Clinics and related Modality Clinics, which it describes as "medical fraud mills." (Ex. B at ¶ 5(c)).

Tri-State is only one of numerous premises the affidavit describes and then seeks authority to search. Indeed, the affidavit's discussion of probable cause with respect to Tri-State is limited to several sentences, all in paragraph 12: Specifically, the affidavit alleges that, according to a cooperating witness, Zayonts and Kremerman maintained billing operations on the premises that are used to service Modality Clinics, and also paid kickbacks to that witness on the premises. The affidavit further alleges that, according to another cooperating witness, Zayonts controls a business on the premises, which performs billing services. (Ex. B at ¶ 12).

These limited allegations apparently served as the basis for a comprehensive search and seizure of all of Tri-State's operations, even though the affidavit provided no basis to conclude that Tri-State's alleged work on behalf of these Modality Clinics constituted the entirety of its business. Significantly, neither the warrant nor the affidavit identified the particular Modality Clinics in question, even though the government's cooperating witness could presumably have provided that information, and thus any effort to particularize the search was simply discarded. Zaretskiy's entire business was searched even though the affidavit provided no probable cause to link him to any crime, and even though the affidavit was silent about the general nature and scope of Tri-State's business operations apart from the allegation that it had performed billing services for certain unspecified Modality Clinics. There was no allegation, for example, that Tri-State operated as a "fraud mill" in the same manner as alleged of various No-Fault and Modality Clinics.

The purported justification for the breadth of the search appears to stem not from any particular allegation about Tri-State but from the attesting agent's own experience in conducting other investigations of fraud.  In the affidavit, the agent identifies a broad array of documents and devices that can be used to carry out fraud.  (Ex. B, ¶¶ 22-26).  Even assuming that such general statements, without more, can be used to justify a blanket search, none of the information or direction that might be gleaned from his observations was available to the agents executing the search, as the agent's affidavit was neither attached to nor incorporated in the warrant.

### D. Execution of the Search Warrant

On February 29, 2012, agents executing the search seized essentially all computers and electronic storage devices found on the premises, including 27 different pieces of equipment.  According to a search inventory, they also seized checks, signature stamps, a "[b]ook containing information on clients," "signed health claim forms," bank documents, "miscellaneous document[s] in language other than English," calendars, storage rental information, and a "[r]ed folder with handwritten names, two pieces of paper." (Ex. D).

### E. Apparently No Off-Site Searches Have Been Conducted To Date

As far as defense counsel are aware, none of the computers seized from Tri-State have yet to be searched off-site.  In all, the government seized more than 60 computers from various locations, including Tri-State.  At a status conference on March 8, 2012, approximately ten days after the search, the government advised the Court that "[w]e are not going to be able to image and go through all of those computers by May 15th.  As we are able to obtain information from those computers, we will turn it over." (Ex. E, Tr. 3/8/2012 at 32).  Several months later, at a status conference on June 28, 2012, the government advised, "The government has not yet . . ., and could not by this point, go through all of the computers. . . . As we go through them, which is going to be a methodical and long process . . .  We're going to have to make some

6

determination, based on a variety of factors, as to which ones we're going to look at." (Ex. F, Tr. 6/28/2012 at 13-14). After several more months, at a status conference on September 20, 2012, the government advised, "we have not done the search of the computer information ourselves and we have not identified any material on those computers that we intend to use at trial." (Ex. G, Tr. 9/20/2012 at 14). The government continued, "as we approach trial, and we identify documents or materials that we will want to use at trial, we will then produce those to the defendants." (*Id.* at 38). Most recently, at a status conference on December 5, 2012, the government advised, "it is possible that there are patient records on the computers we have seized. We don't know that yet. Our agents have just started looking through those computers." (Ex. H, Tr. 12/5/2012 at 24).

## ARGUMENT

### I.

### THE WARRANT WAS OVERBROAD AND WRONGLY AUTHORIZED THE SEIZURE OF ITEMS AS TO WHICH THERE WAS NO SHOWING OF PROBABLE CAUSE

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A search warrant that "authorizes the seizure of items as to which there is no probable cause" is impermissibly overbroad. *See United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002). The overbreadth analysis focuses on whether the magistrate judge authorized a search warrant that provided for the seizure of items as to which there was no probable cause. *See, e.g., United States v. Hernandez*, No. 09 Cr. 625, U.S. Dist. LEXIS 719, at *25 (S.D.N.Y. Jan. 6, 2010).

The Tri-State warrant was overbroad, authorizing the seizure of broad categories of documents and electronic equipment that vastly exceeded the limited scope of probable cause set forth in the supporting affidavit. Indeed, the warrant authorized nothing less than a wholesale seizure of business records and computers – all bank account information, all documents relating to patient medical care, all computers and electronic devices of any kind – regardless of whether they were linked to any crime. The justification for such a comprehensive search and seizure appears to stem from the breadth of the overarching insurance fraud scheme alleged in the supporting affidavit, and from the agent's own experience in other unrelated matters. But it does not stem from the limited allegations of probable cause concerning Tri-State set forth in the supporting affidavit.

The affidavit's recital of probable cause with respect to Tri-State is limited to the allegation that billing services were performed on the premises for the Modality Clinics said to be linked to Messrs. Zayonts and Kremerman, and that kickbacks were paid on the premises in connection with the same Modality Clinics. (Ex. B at ¶ 12). Assuming the truth of these allegations, they provide probable cause at most for the search of records and electronic devices relating to such Modality Clinics. They do not support a broader warrant or justify the seizure of every piece of paper and computer at Tri-State's place of business – especially when there is no allegation that Tri-State as a whole was involved in illegal activity, and no allegation to support probable cause as to any item unrelated to Modality Clinics allegedly associated with Zayonts or Kremerman.[3]

---

[3] The affidavit describes Tri-State merely as a billing company, and not as a provider of medical services, and is absolutely silent when it comes to providing any probable cause to suspect that a billing company would possess "patient medical treatment" or "patient care" records, as called for by the warrant, instead of merely financial or administrative records. There is no stated basis – and one cannot merely be assumed in order to satisfy the

8

In *United States v. SDI Future Health, Inc.,* 568 F.3d 684 (9th Cir. 2009), the Ninth Circuit held that, in connection with a search of corporate offices, the items subject to search and seizure must be tied carefully to the allegations of probable cause in the supporting affidavit. There, the affidavit set forth probable cause to believe that the defendant company had conspired with physicians and cardiac diagnosticians to defraud Medicare, the Federal Employees Health Benefit Program, and private health insurers through a scheme of double-billing and kickbacks. *Id.* at 691. The search warrant identified 24 categories of items to be seized. Although the Ninth Circuit found that there was probable cause with respect to 19 of these categories, it found that the remaining 5 categories were stated too broadly to be supported by probable cause, noting that "probable cause did not exist to seize all items of those particular types." *Id.* at 705 (quotations and alterations omitted). The Ninth Circuit was particularly critical of one category that generally called for "documents related to non-privileged internal memoranda and E-mail," but which made "no attempt" to delimit the search to those memoranda and emails related to the alleged fraud. *Id.* at 704. Another discarded category included "rolodexes, address books and calendars." *Id.* The Ninth Circuit found that this category "amounts to the laziest of gestures in the direction of specificity," and that it "practically begs the search team to find and to seize the contact information of every person who ever dealt with" the defendant. *Id.* at 705.

Of the eight categories of documents and materials listed in Attachment A to the Tri-State warrant, none is specifically crafted to limit the search and seizure to those items that might fall within the ambit of any alleged criminality. For example, the agents were free to seize financial or patient records even if there was no basis to conclude that they related to any fraudulent

---

constitutional requirement of probable cause – by which to conclude that a third-party billing company would possess patient treatment records in connection with its processing of patient bills.

9

scheme or to any of the individuals under investigation (the individuals under investigation were not even named in the face of the warrant).  Nor did the warrant specify any timeframe to constrain the search and seizure to the particular time period under investigation.  *See United States v. Abboud*, 438 F. 3d 554, 576 (6th Cir. 2006) (holding that a warrant was insufficiently particular because it was not limited to documents from the time period for which the magistrate had probable cause to believe fraud had occurred); *Roberts v. United States*, 656 F. Supp 929 (S.D.N.Y. 1987), *rev'd on other grounds*, 852 F. 2d 671 (2d Cir. 1988) (where no limit as to dates of documents to be seized, the warrant gave rise to a general, exploratory search).

The generality of the warrant, and its listing of categories divorced from any articulation of a particular fraudulent scheme, cannot be salvaged by the supporting affidavit, which was neither attached to nor incorporated by the warrant.  *See Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004) ("a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant"); *see also United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) ("A sufficiently specific affidavit will not itself cure an overbroad warrant.  Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference to the warrant itself and attached to it.") (internal citation omitted); *United States v. Cohan*, 628 F.Supp.2d 355, 362-63 (E.D.N.Y. 2009) (same).

In short, the warrant was not appropriately limited within the bounds of probable cause, but rather called for a blanket "all records" search, even though there was no allegation in the supporting affidavit that Tri-State's "entire business" was "pervade[d]" or "permeated" by fraud.  *Contrast U.S. Postal Serv. v. C.E.C. Servs.,* 869 F.2d 184, 187 (2d Cir. 1989); *Nat'l City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980); *see also United States v. Markey*,

10

131 F.Supp.2d 316, 326 (D. Conn. 2001) ("all-records" search appropriate upon probable cause that "entire business operation was illegal"); *United States v. Paccione*, 738 F.Supp. 691, 708 (S.D.N.Y. 1990) (same where "business is totally illegal").

Under the circumstances, the appropriate remedy is suppression of all items seized. All eight categories listed in Attachment A have the same general failing: they are unconstrained by any requirement that the items seized be related to any alleged fraud or to any specific articulation of probable cause. The categories go well beyond the limited probable cause – relating to Modality Clinics allegedly associated with Zayonts and Kremerman – set forth in the supporting affidavit. Indeed, because the affidavit was not attached to or incorporated by the warrant, the executing agents would not even know the most basic description or parameters of the alleged fraud. In view of such overbreadth, suppression is mandated by the Fourth Amendment. *Accord United States v. Vilar*, No. S3 05 Cr. 621 (KMK), 2007 WL 1075041, at *21-*23-*24 (S.D.N.Y. April 4, 2007); *United States v. Hickey*, 16 F.Supp.2d 223, 238-241, 243-45 (E.D.N.Y. 1998); *United States v. Gigante*, 979 F.Supp. 959, 965-67 (S.D.N.Y. 1997); *Roberts v. United States*, 656 F.Supp. 929, 934-37 (S.D.N.Y. 1987), *rev'd on other grounds*, 852 F.2d 671 (2d Cir. 1988) (all granting total or partial suppression for similarly overbroad warrants); *United States v. Hunter*, 13 F.Supp.2d 574, 584 (D. Vt. 1998) (voiding warrant's "catch-all" computer provision as "insufficiently particularized"). [4]

---

[4] The executing agents managed to transgress the limits of even this overly broad Warrant, seizing documents not authorized to be seized. *See United States v. Legg*, 18 F.3d 240, 242 (4th Cir. 1994) ("[T]he seizure of items not described in the warrant violates the Fourth Amendment – and the items should be suppressed – unless an exception to the warrant requirement applies.") For example, according to the search inventory, the government seized a "Book containing information on clients, signed health claim forms." (Ex. D). The warrant does not authorize the seizure of documents regarding Tri-State clients to the extent they do not contain patient medical records. Similarly, the government seized "Miscellaneous document in language other than English (located in safe in closet of

11

## II.

## BECAUSE THE SUPPORTING AFFIDAVIT WAS NOT ATTACHED TO OR INCORPORATED IN THE WARRANT, THE WARRANT WAS AN UNLAWFUL GENERAL WARRANT THAT GAVE RISE TO AN UNLAWFUL GENERAL SEARCH

In addition to overbreadth, *i.e.*, authorizing the search and seizure of items as to which there was no probable cause, the Tri-State warrant suffers from a lack of particularity, *i.e.*, authorizing the agents to exercise unbridled discretion in conducting a general exploratory rummaging through a person's papers in search of criminal evidence. These concepts are related but distinct. *See United States v. Yusuf*, 461 F.3d 374, 393 n. 19 (3d Cir. 2006) (discussing the distinction).

The particularity requirement, fundamental to the Fourth Amendment, assures that "those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not the intrusion *per se*, but of a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). By limiting searches "to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

Among the factors that courts consider in determining whether a warrant is sufficiently particular are: (1) whether the warrant sets out standards by which the responsible agents can

---

office)." (Ex. D, FD-302 Report, 2/29/2012, at 2). The government has not provided any basis for seizing this document. The government also seized "[s]torage rental information" (*Id.*) not authorized by the warrant, as well as a "Red folder with handwritten names, two pieces of paper," (*Id.*), without any basis in the warrant. These items should be returned immediately.

differentiate items to be seized from those not to be seized, and (2) whether the government had further information available at the time that could have been used to narrow the descriptions of the items to be seized. *United States v. Cioffi*, 668 F.Supp.2d 385, 391 (E.D.N.Y. 2009).

Significantly, the particularly requirement applies to the face of the warrant itself. A supporting affidavit can be relied upon to provide particularity, but only if it is attached to the warrant or is incorporated by reference therein. *See Groh*, 540 U.S. at 557; *see also United States v. Waker*, 534 F.3d 168, 172 (2d Cir. 2008); *United States v. Cioffi*, 668 F.Supp.2d 385, 392-93 (E.D.N.Y. 2009). As Senior District Judge Block held in *Cioffi*, where a warrant is too general, it cannot be saved by the supporting affidavit if that affidavit is not attached to or incorporated in the warrant itself. *Id.* at 396. "The fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not the supporting documents." *Cioffi*, 668 F.Supp.2d at 394 (emphasis in original), citing *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). Here, of course, it was not.

The Tri-State warrant appears to have included only one attachment, "Attachment A," which simply lists the items to be seized. The supporting affidavit had been filed under seal. Unchaperoned by the supporting affidavit, the Tri-State warrant authorized the wholesale search and seizure of virtually every financial record and computer on the premises without limiting the items seized to the particular subjects under investigation (Zayonts and Kremerman), to any particular time frame, or to any particular fraudulent scheme – all of this information being set forth only in the supporting affidavit. *See George*, 975 F.2d at 75-76 (holding that a warrant that did not specify the crimes being investigated was a prohibited general warrant). As such, the Tri-State warrant was an unlawful general warrant, and its fruits must be suppressed.

13

### III.

### COMPUTERS AND OTHER ELECTRONIC STORAGE DEVICES WERE SEIZED BUT APPARENTLY NEVER SEARCHED

The government seized 27 electronic storage devices from Tri-State. (Ex. D).  These devices were taken off-site and apparently have yet to be searched even though nearly a year has elapsed since the initial search of Tri-State's premises.  As set forth above, the government has indicated at successive status conferences that it has yet to undertake any such task and might not do so until shortly before trial.  Such delay is grounds for suppression.  In *United States v. Metter*, 2012 WL 1744251 (E.D.N.Y. May 17, 2012), Judge Irrizary recently suppressed a similar wholesale seizure of computer equipment where the government had significantly delayed any off-site search of the seized materials.  There, "approximately fifteen months" after the government executed its search warrants, "the government had not conducted its review of the evidence seized and imaged to determine whether any of that imaged evidence fell outside the scope of the search warrant." *Id.* at *6.  Judge Irrizary found the circumstances to be unreasonable under the Fourth Amendment.

A further problem is that the agents conducting any off-site searches of electronic materials appear to be operating without any written protocol to govern and limit the scope of their searches.  While the Second Circuit has yet to expressly require search warrants to include search protocols for digital searches, other federal courts have.  In *United States v. Comprehensive Drug Testing, Inc.,* 579 F.3d 989, 1006-07 (9th Cir. 2009) (*en banc*), for example, the Ninth Circuit set forth the parameters of a constitutionally sufficient protocol, including (a) waiver of the plain view doctrine; (b) shielding case agents from data not strictly targeted by the warrant; (c) disclosing the true risks, if any, of evidence destruction; and (d) narrowly tailoring the search to uncover only information supported by probable cause.  The

14

Fourth Amendment does not countenance ongoing, unlimited searches for months on end, especially absent a meaningful protocol to limit the discretion of the agents given access to a broad swath of digital data.  *See Vilar*, 2007 WL 1075041, at *37 (government must delineate search limits so warrant does not become "blank check" to "scour" computer for proof of different crimes); *United States v. Graziano*, 558 F.Supp.2d 304, 316 (E.D.N.Y. 2008) (government must "particularize" items sought so as not to turn every computer search "into a general search").

## CONCLUSION

For the foregoing reasons, we respectfully urge the Court to grant this motion and to suppress all evidence seized from the search of Tri-State's premises.

Dated: January 18, 2013  
       New York, New York

Respectfully submitted,

CLAYMAN & ROSENBERG LLP

By:     /S/  
Henry E. Mazurek  
305 Madison Avenue, Suite 1301  
New York, New York 10165  
Tel.212.922.1080  
Fax212.949.8255  
*Attorney for Defendant*  
*Vladislav Zaretskiy*

HAFETZ NECHELES & ROCCO  
Frederick P. Hafetz  
Noah E. Shelanski  
500 5th Avenue, 29th Floor  
New York, NY 10110  
Tel. 212 997-7595  
Fax 212 997-7646  
*Attorneys for Defendant*  
*Yuriy Zayonts*

COOLEY LLP
Jonathan Bach
Michael A. Blasie
1114 Avenue of the Americas
New York, NY 10036
Tel. 212 479-6000
Fax 212 479-6275
*Attorneys for Defendant*
*Mikhail Kremerman*
